Filed 12/15/25; certified for publication 1/6/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| MARGUERITE RUFFIER et al., | C101551 |
| Plaintiffs and Appellants, | (Super. Ct. No. 21CVC12131) |
| v. | |
| VOLCANO HILLS ROAD MAINTENANCE ASSOCIATION, | |
| Defendant and Respondent. | |

This case is about California's statutory scheme governing condominiums and other "common interest developments." In the 1970's, a common interest development was formed to maintain private roads used by 22 parcels of land in Amador County. Each parcel was subject to an initial annual assessment of $100. Increases in the annual assessment amount were contemplated, but a limit of $200 per year per parcel was imposed. Volcano Hills Road Maintenance Association (the Association) currently administers the common interest development. Ownership of at least one parcel of land

1

in the common interest development constitutes membership in the Association. At the Association's June 2019 annual meeting, members voted to eliminate the $200 limit. When the Association's board of directors later voted to increase the annual assessment from $200 to $1,000, a few members (plaintiffs) challenged the increase in a lawsuit against the Association and others. Plaintiffs sought a declaratory judgment that the assessment increase was invalid under California law, in part because the board of directors did not obtain the approval of a majority of a quorum of members. The trial court denied plaintiffs' request for declaratory relief. On appeal, plaintiffs argue the trial court erred. We agree and will reverse and remand the matter with directions that the trial court issue a declaratory judgment stating the challenged assessment increase imposed by the Association's board is void and invalid.

BACKGROUND

In a 1974 document that we will hereinafter refer to as "the Declaration," multiple Amador County landowners, who proclaimed themselves to be "desirous of establishing a means of providing for the maintenance of certain private roads" that touched their properties, established a "Road Maintenance Committee" (Committee) and empowered it to charge annual assessments of $100 for each of the 22 parcels of land covered by the Declaration. The Declaration also (1) empowered the Committee to increase the assessment for each parcel "up to a maximum . . . of $200 per year per parcel" ("the $200 limit") and (2) contemplated a successor body to which all the powers and duties of the Committee would pass. Four years later, the Association was formed and assumed the powers and duties of the Committee, as contemplated in the Declaration. The Association's articles of association provide that there is only one class of voting membership—each parcel is entitled to one vote. The articles also provide that they may be amended "only by the vote or written consent of members representing ownership of sixty six and two thirds (66-2/3) percent or more of the property."

Since the Association's formation, its bylaws have provided, inter alia, that (1) the presence of members entitled to cast 51 percent of the votes of the membership at any annual meeting or special meeting is a quorum for any action not otherwise prohibited by the Declaration, articles of association, or bylaws; (2) once a quorum has been established, members may continue to do business even after the withdrawal of one or more members leaves "less than a quorum"; (3) the bylaws may be amended "by a majority of the members at any annual meeting or special meeting of the members called for that purpose"; and (4) the business and affairs of the Association are managed by a board of directors, all of whom must be members of the Association.

Members constituting the bare minimum necessary for a quorum—those owning 12 parcels of land—were present at the Association's annual meeting in June 2019, when the chairman of the board made a motion to amend the bylaws, ostensibly to eliminate the $200 limit, which had been reached by that point. Because one member left before voting occurred, the vote on the motion was 10 in favor and 1 opposed (10-1). When the board of directors met a month later in July 2019, it voted to increase the annual assessment for the 2020-2021 fiscal year to $1,000 per parcel.

In April 2021, plaintiffs' predecessors in interest filed a verified complaint for declaratory relief. Relevant here, they claimed the June 2019 amendment of the bylaws that ostensibly eliminated the $200 limit was void for multiple reasons. One reason was that the amendment contradicted the Association's articles of association and the Declaration, which are "governing documents" that outrank the bylaws in the hierarchy of documents set forth in the Davis-Stirling Common Interest Development Act (the Act). (Civ. Code, §§ 4000-6150.)[1] Another reason, plaintiffs argued, was that a valid

---

[1] Undesignated statutory references are to the Civil Code.

3

quorum of the Association's membership never ratified the amendment, contrary to the Act.

Plaintiffs also claimed the July 2019 vote by the board of directors to raise the annual assessment from $200 to $1,000 was void under the Act because it did not obtain the approval of a quorum of members.

The first cause of action in the complaint sought a judicial determination that the "[r]ate [i]ncrease was illegal and/or invalid."

After holding a bench trial, the trial court issued a statement of decision, concluding the increase in the annual assessment was "not unlawfully levied for the purpose of funding the repairs necessary to maintain" the Association's roads. This was so, the trial court reasoned, because the Association's bylaws were properly amended in June 2019 and because the $200 limit was unreasonable and therefore unenforceable. Noting that, after insurance costs, the $200 limit left the Association with "only $1900 per year" to maintain its roads, the trial court invoked section 5975—which, in the trial court's words, "provides the covenants and restrictions of a Declaration will be enforced unless they are unreasonable"—and determined that because "[a] public policy is that the association fulfill its fundamental purpose," the $200 limit "effected an unreasonable restriction . . . and therefore an unenforceable restriction."

Accordingly, the trial court entered judgment in May 2024 denying the request for declaratory relief. Plaintiffs filed a timely notice of appeal in July 2024. Their opening brief was filed in May 2025, and this case became fully briefed on July 31, 2025.

DISCUSSION

I

*Legal Background*

A.      *The Act*

Enacted in 1985, the Act consolidated the statutory law governing condominiums and other common interest developments, and provides that a common interest

4

development is created " 'whenever a separate interest coupled with an interest in the common area or membership in [an] association is, or has been, conveyed' and a declaration, a condominium plan, if one exists, and a final or parcel map are recorded." (*Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 81 (*Villa De Las Palmas*).)[2] "Common interest developments are required to be managed by a homeowners association [citation] defined as 'a nonprofit corporation or unincorporated association created for the purpose of managing a common interest development' [citation], which homeowners are generally mandated to join [citation]." (*Ibid.*) There is no dispute that the Act applies here.

Under the Act, the term "governing documents" means "the declaration and any other documents, such as bylaws, operating rules, articles of incorporation, or articles of association, which govern the operation of the common interest development or association." (§ 4150.) There is a clear hierarchy: "the law shall prevail" in any conflict between the governing documents and the law; the declaration prevails in any conflict with the articles of incorporation (or association); and the articles of association prevail in any conflict with the bylaws. (§ 4205.)

"The declaration is often referred to as the development's constitution [citations] and 'establish[es] a system of governance.' [Citation.] Importantly, it contains the development's covenants and restrictions, which are 'enforceable equitable servitudes, unless unreasonable.' " (*Villa De Las Palmas*, *supra*, 33 Cal.4th at pp. 81-82.)[3]

---

[2]  The Act applies to common interest developments that were created before its enactment. (*Villa De Las Palmas*, *supra*, 33 Cal.4th at p. 81, fn. 2.) And effective January 1, 2013, it was "reorganized and recodified as . . . section 4000 et seq. (See Stats. 2012, ch. 180, §§ 1, 2.)" (*McArthur v. McArthur* (2014) 224 Cal.App.4th 651, 660, fn. 9.)

[3]  "Several provisions of the Act allow for the amendment of the declaration." (*Villa De Las Palmas*, *supra*, 33 Cal.4th at p. 82.) One reason for this is that the governing

B. *Sections 5605 and 5610*

In relevant part, section 5605 provides: "(a) Annual increases in regular assessments for any fiscal year shall not be imposed unless the board has complied with paragraphs (1), (2), (4), (5), (6), (7), and (8) of subdivision (b) of Section 5300 with respect to that fiscal year,[4] or has obtained the approval of a majority of a quorum of members . . . at a member meeting or election"; "(b) Notwithstanding more restrictive limitations placed on the board by the governing documents, the board may not impose a regular assessment that is more than 20 percent greater than the regular assessment for the association's preceding fiscal year . . . without the approval of a majority of a quorum of members." (§ 5605, subds. (a), (b).)

Accordingly, under the Act, a board that has complied with the pertinent requirements in section 5300 may increase an annual assessment up to 20 percent without the approval of a majority of a quorum of its members (§ 5605, subds. (a), (b)), while a board that has *not* complied with the requirements in section 5300 may not increase an annual assessment by any amount without the approval of a majority of a quorum of its

---

documents "for many older homeowners associations required supermajority votes for amendments, but voter apathy and other reasons often make achieving such a supermajority impractical." (*Quail Lakes Owners Assn. v. Kozina* (2012) 204 Cal.App.4th 1132, 1134-1135.) For example, section 4275 creates a court procedure for lowering the supermajority requirement. (*Quail Lakes Owners Assn.*, at p. 1135.) The statute provides that a homeowners association, or any member, may petition the superior court for a reduction in the percentage of affirmative votes required to amend the declaration if such amendment normally requires approval by members having more than 50 percent of the votes in the association. (§ 4275, subd. (a).) " 'The court may, but need not, grant the petition if it finds all of the following: Notice was properly given; the balloting was properly conducted; reasonable efforts were made to permit eligible members to vote; "[members] having more than 50 percent of the votes . . . voted in favor of the amendment"; and "[t]he amendment is reasonable." ' " (*Quail Lakes Owners Assn.*, at p. 1135; see § 4275, subd. (c).)

[4] Section 5300, subdivision (a) requires associations to generate annual budget reports. Subdivision (b) of the section details what information the report must contain.

6

members (see § 5605, subd. (a) ["Annual increases in regular assessments for any fiscal year shall not be imposed unless . . ."]).  And regardless of a board's compliance or noncompliance with the pertinent requirements in section 5300, it may increase the annual assessment by *any* amount that a majority of a quorum of its members approves. (§ 5605, subd. (b).)

Section 5610 provides, in relevant part, that "[s]ection 5605 does not limit" assessment increases necessary for any of the following "emergency situations":  (a) an extraordinary expense required by an order of a court; (b) an extraordinary expense necessary to operate, repair, or maintain part of a common interest development "where a threat to personal health or safety or another hazardous condition or circumstance on the property is discovered"; and (c) an extraordinary expense that could not have been reasonably foreseen by the board, and that is necessary to repair or maintain part of the common interest development.  (§ 5610, subds. (a)-(c).)

The legislative history indicates this statutory scheme is the result of a careful balancing:  granting to homeowners associations the tools and flexibility needed to adequately maintain and repair common areas on the one hand, and protecting individual members of the associations from large, unforeseen assessment increases on the other hand.  The Legislature struck that balance by raising the annual assessment increase limit from 10 percent to 20 percent while simultaneously shortening the list of costs that were exempt from the limit.  (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 279 (1987-1988 Reg. Sess.) as amended Aug. 25, 1987, pp. 2-3; Assem. Housing & Community Development Com., Republican Analysis of Assem. Bill. No. 279 (1987-1988 Reg. Sess.) Aug. 31, 1987, p. 1 [the legislation "raises the cap on regular assessments which a homeowner board can unilaterally impose from 10% to 20% per year," "in trade for including under the cap maintenance, repairs . . . and other normal operating costs for common areas which previously had no limit on assessment increases"].)

C. *Standard of Review*

Where the facts are undisputed, the legal significance of those facts is a question of law, which we review de novo. (*Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1026.) In reviewing a judgment based upon a statement of decision following a bench trial, we review findings of fact for substantial evidence and will resolve conflicts in the evidence or reasonable inferences to be drawn from the evidence in support of the trial court's decision. (*Id.* at pp. 1026-1027.)

"The propriety of a trial court's denial of declaratory relief involves a two-prong inquiry. The first prong concerns whether 'a probable future dispute over legal rights between parties is sufficiently ripe to represent an "actual controversy" within the meaning of the statute authorizing declaratory relief [citation], as opposed to purely hypothetical concerns.' [Citation.] This is a 'question of law that we review de novo on appeal.' [Citations.] The second prong concerns '[w]hether such [an] actual controversy *merits* declaratory relief as necessary and proper [citation].' [Citation.] This is a matter within the trial court's sound discretion 'except in the extreme circumstances where relief is "entirely appropriate" such that a trial court would abuse its discretion in denying relief . . . or where relief would *never* be necessary or proper.' " (*Artus v. Gramercy Towers Condominium Assn.* (2018) 19 Cal.App.5th 923, 930-931.)

But if the trial court's denial of declaratory relief is not based on discretionary reasons, we conduct an independent review.[5] (*Protect Our Neighborhoods v. City of Palm Springs* (2022) 73 Cal.App.5th 667, 676.)

---

[5] Independent review differs from de novo review because an appellate court defers to the trial court's credibility determinations under independent review. (*Electronic Frontier Foundation, Inc. v. Superior Court* (2022) 83 Cal.App.5th 407, 419, fn. 5.)

## II

### *The Assessment Increase was Invalid*

Plaintiffs contend the Association's board did not have the authority to raise the annual assessment in July 2019, because under section 5605, subdivision (a), the board neither complied with section 5300's reporting requirements nor held a vote to obtain the approval of a majority of a quorum of its membership. They further contend that section 5605, subdivision (b) mandates that even if the board had done the required reporting that would have allowed it to increase the annual assessment, any increase greater than 20 percent required the approval of a majority of a quorum of members.

The Association does not dispute that it did not comply with section 5300's reporting requirements. But the Association contends (1) the trial court correctly determined that the $200 limit was unreasonable; (2) the governing documents did not preclude the assessment increase; (3) even if the assessment increase was inconsistent with section 5605, plaintiffs are not entitled to declaratory relief because the Association's roads presented an emergency threat to health and safety under section 5610; and (4) even if section 5610 did not apply, the trial court did not abuse its discretion in declining to invalidate the assessment increase because the Act (a) requires an association to "levy regular and special assessments sufficient to perform its obligations under the governing documents and" the Act (§ 5600), and (b) does not provide a means for members of an association to invalidate an assessment increase.

We agree with plaintiffs that the July 2019 assessment increase by the board is void due to noncompliance with section 5605. This is so because the record reflects the membership was never asked to approve the increase, and it is undisputed the board did not comply with the pertinent requirements of section 5300. (§ 5605, subd. (a) ["Annual increases in regular assessments for any fiscal year shall not be imposed unless . . ."].) The Association's arguments are unavailing: two of them are not responsive to plaintiffs'

section 5605 argument, the third argument is forfeited on appeal because it was never raised below, and the fourth argument lacks merit.

Thus, we conclude the trial erred when it failed to declare that the July 2019 assessment increase was invalid and void under the Act.[6]  We will remand the matter and direct the trial court to issue that declaratory judgment.

The Association's first and second arguments outlined above are unavailing because they do not respond to plaintiff's section 5605 contention.  Whether or not the trial court correctly determined that the $200 limit was unreasonable and unenforceable, section 5605's requirements remained.  Put differently, even if the Association's governing documents did not limit the board's ability to increase annual assessments in July 2019, section 5605 did impose limits:  an increase was impermissible absent compliance with specific parts of section 5300 *or* the approval of a majority of a quorum of members.  Neither occurred here.

As plaintiffs note, the Association's argument that the roads presented an emergency threat to health and safety under section 5610 is forfeited on appeal because it

---

[6]  The June 2019 vote by a majority of a quorum of members of the Association—ostensibly to eliminate the $200 limit—is a distinct issue, and we limit our focus here to the assessment increase because we can resolve this appeal on that straightforward basis. (See *People v. Buza* (2018) 4 Cal.5th 658, 693 [" ' "if it is not necessary to decide more, it is necessary not to decide more" ' "].)  But the June 2019 action also appears to have been contrary to the Act.  First, the Act indicates that amendment of an association's bylaws to circumvent a provision in a declaration is an invalid procedure.  (See § 4205 [hierarchy of documents in the case of any conflict].)  Further, the Declaration appears to be silent on the issue of amendment.  If that is indeed the case, the Act requires "approval of a majority of *all* members," not just a majority of a quorum of members, to approve an amendment to the Declaration.  (See § 4270, subd. (b) ["If the declaration does not specify the percentage of members who must approve an amendment of the declaration, an amendment may be approved by a majority of all members, pursuant to Section 4065"].)

was not raised below.[7]  (See *Guastello v. AIG Specialty Ins. Co.* (2021) 61 Cal.App.5th 97, 105 [respondent forfeited contention on appeal that was not raised in the trial court].)[8] And while we have discretion to consider forfeited arguments that present pure questions of law, this is a factual question, at least in part.  And because this issue was not raised below, plaintiffs had no incentive to develop evidence on it.  Accordingly, we will not consider this forfeited contention.  (See *Esparza v. KS Industries, L.P.* (2017) 13 Cal.App.5th 1228, 1237-1238 [rejecting a party's invitation to consider a new argument on appeal, in part because "the presentation of additional evidence" could have altered the material facts undergirding the legal question].)

The Association's fourth argument is that even if section 5610 did not apply, the trial court did not abuse its discretion in declining to invalidate the assessment increase because the Act requires an association to "levy regular and special assessments sufficient to perform its obligations under the governing documents and" the Act (§ 5600), and the Act does not provide a means for a member of an association to invalidate an assessment increase.  This argument is unpersuasive.

---

[7]  Section 5610 appears nowhere in the parties' trial court papers.  At the court trial, a board member mentioned section 5610 on cross-examination.  He testified that "the idea of raising the assessments [was] based on emergency access, so we have safe roads," and that the board "had the option of doing it as a 5610(b)."  Counsel for plaintiffs pressed the witness, "you did not raise" the assessment "in response to an actual bona fide emergency."  The board member replied:  "Not now, but it's preventive."

[8]  Counsel for the Association asserted at oral argument that a section 5610 theory was "implicit" in the Association's trial court briefing.  But counsel also stated at oral argument that the poor condition of the Association's roads was the result of "years of neglect" and a "problem that developed over decades."  Those statements belie the assertion that the poor condition of the roads presented an emergency that the Association "discovered" just before the board voted to increase the annual assessment in July 2019. (See § 5610, subd. (b).)

11

First, regarding the standard of review, nothing indicates that the trial court's denial of declaratory relief was based on discretionary considerations. To the contrary, the statement of decision reflects the ruling was based on the resolution of legal questions and undisputed facts, including the reasonableness of the $200 limit and public policy considerations. Therefore, we do not defer to the trial court's determinations. (*Gomez v. Smith*, *supra*, 54 Cal.App.5th at p. 1026; *Protect Our Neighborhoods v. City of Palm Springs*, *supra*, 73 Cal.App.5th at p. 676.)

On the merits, both parts of the Association's fourth argument are unpersuasive. Invocation of section 5600 is unpersuasive because it ignores the statute's opening clause: "*Except as provided in Section 5605*, the association shall levy regular and special assessments sufficient to perform its obligations under the governing documents and this act." (§ 5600, subd. (a), italics added.) The general duty to levy sufficient assessments is subject to the requirements of section 5605.

And plaintiffs indeed may bring the instant challenge. Read together, sections 5925 and 5930 contemplate a civil action for declaratory relief in an assessment dispute between a member and an association. (See §§ 5925, subd. (b) [contemplating civil actions for the purpose of enforcing the Act and/or enforcing an association's governing documents]; 5930 [contemplating "enforcement actions" for equitable relief and/or monetary damages, and stating that while an association or a member may not file an enforcement action in the superior court "unless the parties have endeavored to submit their dispute to alternative dispute resolution," "this section does not apply to an assessment dispute"]; *Julian v. Mission Community Hospital* (2017) 11 Cal.App.5th 360, 379 [there is a private right of action to enforce a statute only if the statutory language or legislative history affirmatively indicate, or at least strongly imply, such an intent].)

12

## III

### *Relief*

In their opening brief, plaintiffs assert they are entitled to a declaration that the annual assessment increase was void *and* that they are "entitled to a refund of any excess fees paid." Plaintiffs did not seek monetary damages in their verified complaint; they sought only a judicial determination that the "[r]ate [i]ncrease was illegal and/or invalid." Accordingly, it would be improper for us to explore the question of their entitlement to a refund. (See *Consumer Watchdog v. Department of Managed Health Care* (2014) 225 Cal.App.4th 862, 878 [a party is precluded from asserting claims to relief on appeal that it did not assert in its trial court pleadings].)

### DISPOSITION

The judgment is reversed and the matter is remanded with directions that the trial court issue a declaratory judgment stating the July 2019 assessment increase imposed by the Association's board is void and invalid under the Act. Plaintiffs are entitled to recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

 

                              /s/
                              BOULWARE EURIE, J.

 

We concur:

 

      /s/
DUARTE, Acting P. J.

 

      /s/
FEINBERG, J.

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----


| | |
|---|---|
| MARGUERITE RUFFIER et al., | C101551 |
| Plaintiffs and Appellants, | (Super. Ct. No. 21CVC12131) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| VOLCANO HILLS ROAD MAINTENANCE ASSOCIATION, | |
| Defendant and Respondent. | |

1

The opinion in the above-entitled matter filed on December 15, 2025, was not certified for publication in the Official Reports.  For good cause it now appears the opinion should be published in the Official Reports, and it is so ordered.


FOR THE COURT:


    /s/

DUARTE, Acting P. J.


    /s/

BOULWARE EURIE, J.


    /s/

FEINBERG, J.

EDITORIAL LISTING


APPEAL from a judgment of the Superior Court of Amador County, James D. Garbolino, Judge. Reversed.

Burton & Swett and Thomas M. Swett for Plaintiffs and Appellants.

Resnick & Louis and David B. Burnett; Bates Carey, Agelo L. Reppas, and Colleen P. Sorensen, for Defendant and Respondent.